UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT J. MATZ, individually and )
on behalf of all others similarly situated, )
)
        Plaintiff )
) Case No. 96 C 1095
   v. )
) Judge Joan B. Gottschall
HOUSEHOLD INTERNATIONAL TAX )
REDUCTION INVESTMENT PLAN, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

Robert Matz ("Matz"), on behalf of himself and others similarly situated, sued Household International Tax Reduction Investment Plan ("Plan") under the Employee Retirement Income Security Act ("ERISA"). Matz made contributions to an employee benefit pension plan which were matched by contributions from Household. These matching contributions were subject to a vesting schedule, and Matz was terminated before these contributions had fully vested. Matz claims that the plan was partially terminated and that he should have received the forfeited amounts under a plan provision that provides for full vesting if the plan is partially terminated. Matz now moves for class certification. The motion for class certification is granted in part and denied in part.

**I.    Background**

This case has a lengthy procedural history which the court will summarize. Matz was employed at Hamilton Investments, Inc. ("Hamilton") and made contributions to the Plan. His employer made matching contributions which were subject to a vesting schedule. When Matz

1

was terminated on September 1, 1994, the unvested portion of the matching contributions was forfeited.

On March 20, 1995, Matz submitted a letter to Household's Administrative and Investment Committee to file a claim for vesting, and on April 5, 1995, Household sent Matz a letter denying full vesting. In February 1996, Matz filed the present action seeking the amounts forfeited under the Plan when he was terminated.

In 1997, the Plan moved for summary judgment on the issue of whether Matz exhausted his administrative remedies prior to filing this action. Specifically, the Plan argued that Matz' original letter did not give the Plan notice of his partial termination claim and that Matz did not appeal the Plan's denial of his claim. This court rejected both arguments, holding that Matz had given the Plan sufficient notice of his partial termination claim by stating, "the plan was terminated for myself and all other Hamilton employees," and that Matz was excused from appealing because the Plan did not comply with its own procedures in denying Matz' claim.

The parties next asked the court to determine whether employees terminated after September 30, 2005 could be counted as part of the partial termination analysis and whether they could be members of the plaintiff class, given that the plan was amended so that employees terminated after September 30, 2005 received full vesting. This court held that vested employees could be counted to determine whether a partial termination occurred but that employees terminated after September 30, 2005 could not be included in the plaintiff class.

The parties then asked the court to determine whether the plaintiff could aggregate multiple plan years to determine whether a partial termination occurred. This court held that the plaintiff could aggregate multiple plan years to determine if a partial termination occurred. The

court then certified both orders for interlocutory appeal.

The Seventh Circuit affirmed this court's orders, but the Supreme Court vacated and remanded to the Seventh Circuit for further consideration in light of *United States v. Mead Corp.*, 533 U.S. 218 (2001), which clarified when an administrative agency's decision is entitled to *Chevron* deference. On remand, the Seventh Circuit held that "only non-vested participants should be counted in determining whether partial termination of a pension plan has occurred" and that multiple plan years can be aggregated.

The parties then filed cross-motions for summary judgment on the issue of whether a partial termination occurred. In determining the formula that should be used to make that determination, this court read the Seventh Circuit's opinion to mean that vested participants should be excluded from both the numerator and denominator of the equation. Because under that formula the case was "borderline" as to whether Matz could prove a partial termination, the court denied the motions for summary judgment. Again, this court certified the issue of the formula for determining whether a partial termination occurred. The Seventh Circuit reversed, eliminating the distinction between vested and non-vested participants and holding that, to determine whether a partial termination occurred, the court should divide the number of participants who lost coverage by the total number of participants. The Seventh Circuit also created a rebuttable presumption that a twenty percent or greater reduction in plan participants is partial termination but that a smaller reduction is not. If the percentage is ten to forty percent, the presumption can be rebutted by evidence showing that tax motives were behind the termination of participants. Below ten percent or above forty percent, the presumption is conclusive. Given these determinations, the Seventh Circuit remanded the case to this court.

Matz has now moved for certification of the following class:

> All former employees of Household International, Inc. and its subsidiaries, including but not limited to Hamilton Investments, Inc.; Household Mortgage Services Inc.; Household Bank F.S.B.; and Alexander Hamilton Life Insurance Co. (collectively "Household"), who: (a) were involuntarily terminated or constructively discharged from their employment with Household as a result of the Reorganization (as that term is defined below); (b) had participated in the Plan prior to their termination from employment; and (c) suffered forfeitures of part or all of their account balances in the Plan as a result of the employment termination. The "Reorganization" is defined as that event at Household which occurred during the period beginning about August 1994 and continuing through about June 1996 whereby Household International, Inc., as part of a plan, sold, divested itself or otherwise discontinued certain businesses, including but not limited to its mortgage, thrift banking, retail securities brokerage, and life insurance businesses.

## II.     Legal Standard

Federal Rule of Civil Procedure 23 governs class certification. For class certification, the class must satisfy all of the requirements of Rule 23(a) and one of the categories in Rule 23(b). Rule 23(a) requires that: "(1) the class is numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Matz argues that the class satisfies two of the Rule 23(b) categories: 23(b)(1)(A) and 23(b)(3). Under Rule 23(b)(1)(A), the plaintiff must show that "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Under Rule 23(b)(3), the plaintiff must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and

4

efficient adjudication of the controversy."

**III.   Discussion**

Despite the lengthy and complex procedural history of this case, the court notes that many issues that may well be dispositive have never been decided. The court has never decided whether the terminations by Hamilton Investments, Inc.; Household Mortgage Services Inc.; Household Bank F.S.B.; and Alexander Hamilton Life Insurance Co. (collectively, "the Reorganization Entities") should be aggregated into a single event for determining whether a partial termination of the Plan occurred. The court has also never determined how many of the unnamed plaintiffs alleged to have been constructively discharged actually were and can be counted as persons terminated from the Plan. These issues remain for the factfinder and must be decided in order to perform the calculation endorsed by the Seventh Circuit.

Although the Plan makes several arguments in opposition to class certification, its arguments boil down to two main issues: (1) whether Matz's exhaustion of his claim is sufficient to exhaust the claims of the class members and (2) whether the fact that the court will have to determine whether individual class members were constructively discharged makes the class unmanageable or makes individual issues predominate over class issues.

   A.   <u>Exhaustion</u>

The Plan argues that Matz is not typical or an adequate representative of the putative class because Matz's exhaustion does not excuse failure to exhaust by unnamed members of the class. For the purposes of this motion, the court will assume that Matz is the only class member

who has exhausted and that none of the unnamed class members have exhausted.[1]

Matz argues that only the named plaintiffs must exhaust in ERISA class actions. In the context of ERISA, there is little case law discussing the exhaustion requirements for class actions. Those district courts that have addressed the issue directly, however, have split on whether the unnamed class members in ERISA class actions need to exhaust if the named plaintiffs have done so. *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 395 (E.D. Pa. 2001) ("[I]n the context of an ERISA class action, only the *named plaintiffs* must exhaust their administrative remedies.") (citing Frank Cummings, *ERISA Litigation: An Overview of Major Claims and Defenses,* SF76 ALI-ABA 353, 521 (Jan. 18, 2001)); *Laurenzano v. Blue Cross & Blue Shield of Massachusetts, Inc. Ret. Income Trust*, 134 F. Supp. 2d 189, 211 (D. Mass. 2001) ("[B]ecause this is a class action, all that matters is whether the lead plaintiff has exhausted his remedies.") (citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8 (1975)); 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 5:15 (4th ed.2002) ("When exhaustion of administrative remedies is a precondition for suit, the satisfaction of this requirement by the class plaintiff normally will avoid the necessity for each class member to satisfy this requirement independently."); *but see Coffin v. Bowater Inc.*, 228 F.R.D. 397, 404 (D. Me. 2005) (requiring potential class members to exhaust before becoming part of the plaintiff class); *Gosselink v. American Telephone & Telegraph, Inc.*, No. H-97-3854, 1999 WL 33737340, at *8 (S.D. Tex. Aug. 9, 1999) (holding that named plaintiff was required to provide evidence of the number of

---

[1]On May 26, 2005, this court denied the Plan's motion to compel the depositions of unnamed class members for determining whether they exhausted. The court stated that, for the purposes of the motion for class certification, plaintiff was to argue that only Matz had exhausted. Although Matz has identified other class members who submitted claims to the Plan, this court has not considered those claims. The motion to strike is therefore granted.

class members who had exhausted to satisfy the numerosity requirement).[2]

This court concludes that requiring exhaustion by only the named plaintiffs is the better approach. Courts in this district have adopted this rule for exhaustion in Title VII and Prison Litigation Reform Act ("PLRA") class actions. *See, e.g., Blanchard v. Speedway Superamerica, LLC*, 306 F. Supp. 2d 753, 755 (N.D. Ill. 2004) (In Title VII cases, "[n]amed plaintiffs in class action suits must meet notice and exhaustion requirements, even though class members need not.") (citing *Robinson v. Sheriff of Cook County,* 167 F.3d 1155, 1156 (7th Cir.1999)); *Lewis v. Washington*, 265 F. Supp. 2d 939, 942-43 (N.D. Ill. 2003) (finding that only the named plaintiff has to exhaust for class actions under the PLRA); *see also Rahim v. Sheahan*, No. 99 C 0395, 2001 WL 1263493, at *8 (N.D. Ill. Oct. 19, 2001) ("[A] waiver of the PLRA exhaustion requirement as to the class representative is a waiver as to all putative class members."). In the ERISA context, courts have discretion to require administrative exhaustion, but the exhaustion requirement "is not intended to place a meaningless procedural hurdle in front of plaintiffs who desire to bring claims for violations of their rights under ERISA in federal court." *Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808-09 (7th Cir. 2000). "Rather, the requirement is aimed at encouraging claimants to pursue private remedies and develop a proper administrative record before entering federal court." *Id.* at 809. The approach that in ERISA class actions only the named plaintiffs need exhaust administrative remedies before proceeding to federal court best supports this policy because the administrative record can be developed by the named plaintiff

---

[2]The court notes that, in the two cases requiring exhaustion, neither court provided any rationale for requiring exhaustion by all class members.

without requiring duplicative exhaustion by all unnamed class members.[3]

In this case, Matz filed a letter with the Plan requesting that his pension fund be fully vested and stating that "the plan was terminated for [Matz] and all other Hamilton employees." The court previously held that "this statement was sufficient to put the Plan on notice that Matz, as a member of a larger group of Plan participants, may have qualified for full benefits under the partial termination provision." Order at 4 (Mar. 31, 1997).

Since the court has found that only the named plaintiff need exhaust and that Matz has exhausted, that would seem to be the end of it. The Plan, however, asserts a somewhat more nuanced argument to support its claim that Matz has not exhausted on behalf of the class. The Plan concedes that Matz's letter may have been sufficient notice to the Plan as to claims of other Hamilton employees but argues that it was not sufficient notice as to claims of employees from the other Reorganization Entities. In making this argument, the Plan admits that it cannot find any case law addressing this point in the context of ERISA class actions, and so it attempts to analogize to Title VII class actions. In *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989), the named plaintiffs alleged discrimination based on sex in their EEOC

---

[3] The court also notes that, even if it required the unnamed class members to exhaust, their exhaustion would be excused because it would have been futile. The court can excuse exhaustion by ERISA plaintiffs if pursuing administrative remedies would be futile. *Gallegos,* 210 F.3d at 808. This futility exception applies if the plaintiffs can show that it is certain that their claims will be denied. *See, e.g., Ames v. American Nat'l Can Co.,* 170 F.3d 751, 756 (7th Cir.1999); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). The Plan responded to Matz's claim that the Plan could not "randomly make exceptions to the vesting provisions of the plan for participants such as [Matz] who have not completed the requisite five years of service with Household." There is no reason why the Plan would have treated claims by the other class members any differently from Matz because all would have been asking for a "random exception" as all are Plan participants who forfeited matching contributions because they did not have "the requisite five years of service with Household."

8

charge but failed to include claims of class-wide discrimination. The court stated that "the only claims of discrimination which are cognizable are those that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* at 127 (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)). The court also stated that "'the proper inquiry would be into what EEOC investigation could reasonably be expected to grow from the original complaint." *Id.* (quoting *Babrocky*, 773 F.2d at 864). The court held that, since the named plaintiffs had made only individual charges of discrimination, their class allegations were not within the scope of their original EEOC charge. *Id.* at 128.

The Plan's reliance on *Schnellbaecher* does not withstand scrutiny. First, in contrast to *Schnellbaecher*, the Plan is not arguing that Matz's administrative claim did not include class-wide claims at all, but instead that the "class" referenced in Matz's administrative claim is narrower than the class that Matz is now asking this court to certify. The court in *Schnellbaecher* dealt only with whether an EEOC charge included *any* class allegations. This court is reluctant to stretch *Schnellbaecher* to cover ERISA cases (which do not implicate Title VII's extensive statutory administrative procedures), and then to further stretch it to require that the complete breadth of the class be included in the administrative claim.[4]

Additionally, even if this court adopts the standard that class allegations must be "like or reasonably related to" the allegations contained in the named plaintiff's ERISA claim, Matz has met this standard. The court also notes that this standard is to be applied liberally because

---

[4]The court also notes that, in the cases where courts have held that ERISA class members need not exhaust, there is no indication that the named plaintiffs made class-wide claims. *Thomas*, 201 F.R.D. at 389 (named plaintiffs made claims that they were owed benefits as common law employees); *Laurenzano*, 134 F. Supp. 2d at 192 (named plaintiff sent letter to Plan requesting additional benefits).

ERISA, like Title VII, depends on lay persons to bring claims in the first instance. *See Babrocky,* 773 F.2d at 864. This court previously held that Matz's claim for full vesting was sufficient to give the Plan notice of his partial termination claim. Although much ink has been spilled over the issue, under any formulation, a claim of partial termination requires that a significant percentage of plan participants have been terminated. *Matz v. Household Int'l Tax Reduction Inv. Plan*, 388 F.3d 570, 576 (7th Cir. 2004). Matz's administrative claim gave the Plan notice that he would be seeking to show more than the forfeiture of Matz's funds alone by stating that the Plan was terminated for himself and "all other Hamilton employees." As more employees of the Household entities were terminated, even after Matz filed his administrative claim, the Plan knew that it was terminating more and more people from the Plan. Whether these events can be aggregated is still an open question, but since the Plan had notice of a partial termination claim, the court finds that the continuing termination of employees from the Plan is like or reasonably related to the allegations in Matz's claim to the Plan.

      B.     <u>Constructive Discharge</u>

Matz includes as part of the putative class those were involuntarily terminated and those who were constructively discharged. The Plan argues that the class is not ascertainable because the court will have to make individualized determinations as to which employees were constructively discharged and which employees voluntarily terminated their employment. *See, e.g., Fields v. Maram*, No. 04 C 0174, 2004 WL 1879997, at *3 (N.D. Ill. Aug. 17, 2004) ("'[T]here is a definiteness requirement implied in Rule 23(a)' which dictates that 'the description of a class [be] sufficiently definite to permit ascertainment of the class members.'") (quoting *Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977)). The Plan

asserts that 935 people voluntarily resigned from the Plan during the relevant period and so the court will have to make 935 individualized determinations if Matz's class definition is adopted.

Matz asserts that the number will be significantly less than this because only 266 of the employees who voluntarily terminated their employment worked for the Reorganization Entities. Although Matz asserts that the court may also have to determine whether employees from other Household divisions were constructively terminated as part of the reorganization, the court disagrees because the court has already resolved this issue. In its September 22, 2003 order, the court stated that voluntary resignations and involuntary terminations from Household entities outside the Reorganization Entities would not be considered in calculating whether a partial termination occurred. Although other parts of the court's order were reversed on appeal, the Seventh Circuit did nothing to disturb that ruling. Therefore, the class definition must be amended to delete "but not limited to" because the class is limited to employees of the Reorganization Entities.

Because the class is so limited, the court will have to make 266 individualized determinations to ascertain whether those employees of the Reorganization Entities who voluntarily resigned were in fact constructively discharged. Matz asserts that this requirement does not render the class indefinite because the court will have to make these determinations in any event. The court agrees that these determinations are a necessary part of deciding whether a partial termination of the Plan occurred. In determining liability, the court will have to determine the number of plan participants who involuntarily lost their coverage under the Plan. Unfortunately, the nature of the liability determination in this case requires that many fact-intensive issues, including how many employees were constructively discharged, be resolved

regardless of whether this action proceeds as an individual action or as a class action. Since the class, as amended by the court, will be ascertained as a necessary part of the determinations that this court must make in any event, the court rejects the Plan's argument that the class is indefinite.[5]

## C. Rule 23(a) Requirements

Since the court has rejected the Plan's arguments concerning exhaustion by the unnamed class members and definiteness of the class, the court finds that plaintiff has met the requirements of Rule 23(a). The class contains at least 862 employees of the Reorganization entities who were not 100% vested and were involuntarily terminated from the Plan. Clearly, that number is sufficient to make joinder of all members impracticable. *See, e.g., Mirfasihi v. Fleet Mortgage Corp.*, No. 01 C 722, 2005 WL 1950386, at *12 (N.D. Ill. Aug. 11, 2005) ("[W]here the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met."). Therefore, the class satisfies the numerosity requirement.

As to the other requirements, the court has rejected the Plan's contentions that Matz's claims are not typical and that Matz is an inadequate class representative; those requirements have been met. Finally, the Plan does not dispute that there are questions of law or fact common

---

[5]The Plan also makes a conclusory argument that Matz's claims are not typical of the claims of the class members who were constructively discharged because Matz was involuntarily terminated. Although Matz's claim is slightly factually different from those who were constructively terminated, the claims all arise from the same legal theory, partial termination, and from the same course of conduct by the Plan. *See, e.g., Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ( A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.") (quoting *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983)). As discussed above, resolving Matz's claim will determine whether a partial termination occurred and thus resolve the claims of all class members including those who were constructively terminated.

12

to the class or that class counsel will adequately represent the class.

D.  Rule 23(b)

In addition to satisfying the Rule 23(a) requirements, Matz must show that the class falls within one of the categories within Rule 23(b). Matz argues that the class satisfies two of the Rule 23(b) categories: 23(b)(1)(A) and 23(b)(3). The court agrees.

First, under Rule 23(b)(1)(A), the plaintiff must show that "the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." This standard is met because, given the complicated issues that have already been and are yet to decided in this case, inconsistent adjudications are a real possibility. The only arguments that the Plan makes to counter this are arguments that this court has rejected above or arguments against the class action device in general.[6] Therefore, the court finds that the class meets the requirements of Rule 23(b)(1)(A).

Further, the class meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), the plaintiff must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In

---

[6]Specifically, the Plan reiterates its exhaustion argument which the court has discussed in detail above. The Plan also argues that there is no risk of inconsistent adjudication because, if the Plan loses, it would be barred from relitigating those issues by the doctrine of issue preclusion. If Matz loses, the Plan argues that no other class member would bring suit because Matz has zealously litigated the issues. The court cannot accept this argument because it means, in essence, that a class action could never be certified under Rule 23(b)(1)(A) when the named plaintiff is represented by competent counsel.

arguing that the class does not meet these requirements, the Plan argues that individual issues will predominate over class issues because the court will have to make individualized determinations as to whether some class members were constructively discharged. As discussed above, however, these are really issues common to all class members because the court will need to determine how many employees were terminated from the plan in order to determine whether a partial termination of the Plan occurred. Therefore, the court finds that the class meets the requirements of Rule 23(b)(3).

**IV.     Conclusion**

For the foregoing reasons, the motion for class certification is granted in part and denied in part. The class as certified is:

> All former employees of Hamilton Investments, Inc.; Household Mortgage Services Inc.; Household Bank F.S.B.; and Alexander Hamilton Life Insurance Co. (collectively "Household"), which are subsidiaries of Household International, Inc., who: (a) were involuntarily terminated or constructively discharged from their employment with Household as a result of the Reorganization (as that term is defined below); (b) had participated in the Plan prior to their termination from employment; and (c) suffered forfeitures of part or all of their account balances in the Plan as a result of the employment termination. The "Reorganization" is defined as that event at Household which occurred during the period beginning about August 1994 and continuing through about June 1996 whereby Household International, Inc., as part of a plan, sold, divested itself or otherwise discontinued certain businesses, including but not limited to its mortgage, thrift banking, retail securities brokerage, and life insurance businesses.

ENTER:

____/s/_____
Joan B. Gottschall
United States District Judge

Dated:   December 19, 2005