UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT J. MATZ, individually and<br>on behalf of all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 96 C 1095 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| HOUSEHOLD INTERNATIONAL TAX | ) | |
| REDUCTION INVESTMENT PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

On November 29, 2011, in response to defendant's motion to decertify the class based on

the Supreme Court's decision in *Wal-Mart, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), the court

agreed to reconsider whether the class should be decertified in this case. *Wal-Mart* required the

party seeking class certification to demonstrate with proof, *at the class certification stage*, that

the requirements of Rule 23 are satisfied. One of those requirements, the focus of the decision in

*Wal-Mart,* was the commonality requirement of Rule 23(a)(2): that the plaintiff be permitted to

represent only those who suffered an injury like his. The parties have submitted briefs and other

materials pursuant to the November 29 order.[1] Based on *Wal-Mart* and the Seventh Circuit's

recent opinion in *McReynolds v. Merrill Lynch, Inc.,* ___ F.3d ___, 2012 WL 592745 (7th Cir.

Feb. 24, 2012), the court believes that the class must be decertified in at least one particular:

---

[1]Plaintiff dropped off with the court a banker's box full of discovery materials. It is not clear what the
plaintiff wishes the court to do with these materials, but if it is the plaintiff's wish that the court review them all to
try to figure out (on its own) whether plaintiff has sufficient evidence to justify the certification of a class, the court
is unwilling to take on this task. It is plaintiff's job to point out what from among all this discovery material it is
relying upon.

constructively discharged employees. With respect to terminated employees, the court does not find plaintiff's submissions helpful, and one round of further briefing in this interminable case will unfortunately be necessary.

In *Wal-Mart*, the named plaintiffs sought to represent a class of women injured by the subjective pay and promotion decisions of their local managers; they claimed that Wal-Mart, by refusing to cabin its managers' discretion, was condoning–and was therefore responsible for–the discriminatory treatment they claim resulted. (In addition, they claimed that a strong and uniform corporate culture permitted bias to infect the discretionary decisionmaking of thousands of Wal-Mart managers.) Plaintiffs sought to represent a class of all women employed at a Wal-Mart domestic retail store at any time since December 1998 "who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." *Wal-Mart,* 131 S.Ct. at 2549. As is relevant to the case at bar, the class was defined so that the only people who would recover were those injured by the challenged subjective pay and promotion decisions of their local managers. Nevertheless, to figure out who those people were, the suit would require an examination of millions of employment decisions, and it was impossible to say in advance that the examination of each would yield the same answer to the question of why a given employee was disfavored. (Presumably, while large numbers of decisions might be based on the managers' uncabined and biased discretion, large numbers would be based on other factors altogether.) While recognizing that under some circumstances a company's giving of discretion to lower-level supervisors can be a basis for Title VII liability, this "does not lead to the conclusion that every employee in a company using a system of discretion has such a claim in common."*Id.* at 2554. "In such a company," the Court stated, "demonstrating the invalidity of

one manager's use of discretion will do nothing to demonstrate the invalidity of another's." *Id.*.

*Wal-Mart* makes plain that it is not sufficient to define the class in a way that conditions relief on sharing the named plaintiff's injury unless the plaintiff can show, *at the certification stage*, that the named plaintiff and the members of the putative class shared a common injury. At the certification stage, along with satisfying the other requirements of Rule 23, plaintiff must demonstrate that he and the members of the putative class share the same injury. In the instant case as in *Wal-Mart*, no class member can recover unless, at the merits stage, it is demonstrated that that class member was terminated (or constructively discharged) *as a result of the reorganization*. But *Wal-Mart* makes plain that it is not sufficient to wait until the merits stage to determine whether the plaintiff's injury, and the class members' injury, is the same. Rather, at the certification stage, the named plaintiff must show that the class satisfies Rule 23, including the requirement the members of the class share a common injury.

The Seventh Circuit's recent treatment of *Wal-Mart* in *McReynolds v. Merrill Lynch, Inc.,* is helpful. In *McReynolds*, plaintiffs claimed that Merrill's practice of delegating discretion over broker compensation to "Complex Directors" (branch office supervisors) through their implementation of the company's teaming policy (by which the directors had discretion to approve the formation of employee teams to solicit and service clients) and account distribution policy (by which customers' accounts were transferred when a broker left Merrill Lynch based upon competing brokers' records of revenue) had a disparate impact on African-Americans. Plaintiffs claimed that the teams operated like fraternities with brokers choosing teammates most like themselves, to the disadvantage of minorities, and that if minority employees failed to generate as much revenue as white employees on teams did, they would suffer similarly in

3

account distributions.  The plaintiffs did not contend that the company (or even the directors) acted with discriminatory intent.  Rather, by maintaining a policy of director discretion whereby directors "permitt[ed] brokers to form their own teams and prescrib[ed] criteria for account distributions that favor the already successful–those who may owe their success to having been invited to join a successful or promising team," *McReynolds*, 2012 WL 592745, at *7, the company was maintaining policies that had a disparate impact on racial minorities.

The Seventh Circuit held that the existence *vel non* of company-authorized policies that authorized broker-initiated teaming and based account distributions on past success was a common question that could most efficiently be determined on a class-wide basis.  The resolution of this issue on a class-wide basis might result in an injunction, however, but could not resolve individual class members' claims.  Rather, "[e]ach class member would have to prove that his compensation had been adversely affected by the corporate policies, and by how much." *Id.* at *8.  At the pecuniary relief stage as opposed to the injunction stage, there might be no common issues.  In that case, individual trials would be necessary.  Those trials would be less rather than more complex, however, if the common issue of the existence and legality of the challenged company policy had been already determined.

Having reviewed the parties submissions in light of *Wal-Mart* and *McReynolds,* this court concludes as follows:

(1)     The issue of whether there was a reorganization and the scope of any such reorganization is a common issue which Matz could appropriately litigate on behalf of a class, assuming that he is able to satisfy the other requirements of Rule 23 (numerosity in particular, since the other issues have been previously

4

resolved).

(2)     Plaintiff's attempt to represent a class which includes persons terminated via

"constructive discharge" cannot survive *Wal-Mart* because there appears to be no

evidence at this point (let alone when the class was certified in 2006) that

employees who left the Reorganization entities on their own volition did so

because of the reorganization.  Individual issues predictably abound, as many

people likely left employment for reasons having nothing to do with the putative

reorganization: geographical motives, better employment opportunities, marriage

and divorce, illness, retirement–to name a few that come to mind.  *Wal-Mart* does

not allow the court to find commonality between plaintiff and individuals who

may not have been injured at all or who, if injured, may have suffered an injury

completely unrelated to the plaintiff's.  Put another way, an answer to the

question of whether a partial termination occurred says *nothing* about whether

any person who voluntarily quit did so because of the reorganization.  To the

extent that the court's prior orders assumed that because the merits inquiry would

make clear whether constructively discharged persons should be included in

deciding whether a partial termination occurred, it was permissible to include

them in the class, the court was in error:  "A party seeking class certification must

affirmatively demonstrate his compliance with the Rule–that is, he must be

prepared to prove that there are *in fact* sufficiently numerous parties, common

questions of law or fact, etc."  *Wal-Mart,* 131 S.Ct. at 2551 (emphasis in original).

(3)     Under *Wal-Mart*, plaintiff can represent a class of people who were involuntarily

5

terminated only if he can make a showing *at this stage of the case* that there is a class of people (satisfying the requirements of Rule 23) who share a common injury–that is, were terminated because of the putative reorganization. The class cannot be composed of *all* people who were terminated during the relevant time period, because determining whether all these people shared plaintiff's injury can be determined only by means of a highly-individualized inquiry. Plaintiff's filings contain little or nothing on this subject. Defendant's Response (filed January 4, 2012) indicates that plaintiff has categorized terminated employees as having left a Household entity due to "early retirement, sale of business," "lack of work" and "sale of business." If it is possible to identify a numerically adequate class of employees terminated for these and similar reasons, plaintiff may be able demonstrate the existence of a class of similarly-injured people, who lost their jobs for reasons related to the putative reorganization.[2]

Plaintiff has one week to provide its evidence as to the number of persons who should be included in its class, based on the above criteria. The court will hear brief oral argument on Monday, March 26, 2012, at 9:00 AM.

---

[2]Commentators have recognized that some performance terminations may in fact be subterfuges for reductions-in-force, and should accordingly be included in the partial termination analysis. *See* Marcia S. Wagner & Jon C. Schultze, *Partial Plan Terminations of Qualified Plans*, The ASPPA J., Winter 2011, at 2, http://www.asppa.org/Document-Vault/PDFs/TAJ/TAJ-Winter2011-partialterm.aspx. To the extent plaintiff has evidence of employees who were chosen for termination because of the reorganization but were explicitly terminated for cause, such employees, together with this supporting evidence, may be proposed for inclusion in the class.

ENTER:


_____/s/_____

Joan B. Gottschall
United States District Judge

Dated:  March 12, 2012